UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VANOCUR REFRACTORIES, LLC, | ) | CASE NO.:  1:23-cv-2162 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| FOSBEL, INC., *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Before the Court is Defendant Fosbel, Inc.'s ("Fosbel") Motion to Dismiss the Amended Complaint.  (Doc. 60.)  The motion is fully briefed.  (Docs. 66, 68.)  For the reasons stated herein, Fosbel's Motion to Dismiss is DENIED in part and GRANTED in part.

**I.     BACKGROUND**

   **A.     Factual Background**

A coke oven is used to heat coal to extremely high temperatures.  (Doc. 57 at ¶ 37.)  The heating process creates coke suitable for use in the steel industry.  (*Id.*)  Some coke ovens include a feature called corbels.  (*Id.* at ¶ 38.)  A corbel is a structure of stacked bricks or blocks that not only support the heating walls but also channel air, gas, and exhaust heat.  (*Id.*)

Plaintiff Vanocur Refractories, LLC ("Vanocur") invented technology to use refractory blocks (which are longer and larger than bricks) to create or replace corbels.  (*Id.* at ¶¶ 45-48.)  Vanocur refers to its technology as "Big BLOCK Solutions" design and Modular Cast Block ("MCB") technology.  (Doc. 57 at ¶¶ 1, 37.)  This technology allows Vanocur to more quickly and efficiently manufacture, repair, or replace corbels in a coke oven.  (*See id.* at ¶¶ 38-48.)

At issue in this case is U.S. Patent No. 8,266,853 ("the '853 patent").  (*Id.* at ¶ 49; *see also* Doc. 57-1.)  It relates to the products and methods used to repair or replace corbels in a coke

oven. The '853 patent includes nineteen claims, two of which are at issue in this case. (Doc. 57 at ¶ 51.) Claim No. 1 is an independent claim that recites a particular design of corbel using two tiers of modular blocks with particular apertures that form three passageways for gas. (*Id.*)

> The invention claimed is:
>
> 1. A corbel comprising:
>
> a first tier having first blocks, each of the first blocks comprising a first, substantially horizontal aperture extending through the first block from a front surface to a back surface and a second, substantially vertical aperture formed through atop surface of the block, extending into the first aperture, the first blocks being arranged on a substantially planar surface to align the respective first apertures to define a first, substantially horizontal passageway,
>
> a second tier having second blocks, each of the second blocks comprising a third, substantially vertical aperture extending through the second block from a top surface to a bottom surface, the second blocks being disposed above the first tier of blocks to align the third aperture of each of the second blocks with the second aperture of the first blocks to form a second passageway;
>
> a third passageway extending diagonally from the top of the one of the second blocks to a side of at least one of the first and second blocks; and
>
> a gas source for providing gas to the first passageway.

(Doc. 57-1 at 1645.)[1]

Claim No. 10 is a dependent claim that recites a method of constructing the corbel in Claim 1. (Doc. 57 at ¶ 51.)

> 10. A method of constructing the corbel of claim 1, comprising the steps of:
>
> laying the first tier of blocks;
>
> laying the second tier of blocks above the first tier of blocks; and

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

>introducing gas to the first aperture using the gas source, the gas passing from the first passageway into the second passageway.

(Doc. 57-1 at 1646.)

Vanocur alleges it contracted with a customer Stelco, Inc. ("Stelco"), a North American corporation, for the design and production of a coke oven that used the "Big BLOCK Solution" design. (Doc. 57 at ¶ 8.) At some point in 2020, Stelco halted Vanocur's work on the coke oven. (*Id.* at ¶¶ 11-12.) Vanocur alleges Stelco contracted with Fosbel to fill its remaining coke oven repair needs. (*Id.* at ¶¶ 18-19.) According to Vanocur, Fosbel misrepresented that Vanocur's patent had expired, which would mean Fosbel could use Vanocur's patented technology and design. (*See id.*)

Vanocur alleges Fosbel directed subcontractors, including Upstate Refractory Services, Inc. ("Upstate"), to manufacture refractory blocks that infringe on the '853 patent. (*Id.* at ¶¶ 77-79.) Vanocur alleges these blocks were given to Fosbel. (*Id.* at ¶ 79.) Fosbel then assembled, kept, and/or provided the blocks to Fosbel in Brook Park, Ohio; USX Clairton in Clairton, Pennsylvania; and Stelco in Ontario, Canada. (*Id.*) Vanocur alleges it became aware of this potential infringement after viewing Upstate's website, which included photographs of these blocks that "looked remarkably similar to Vanocur's patented refractory-brock corbel design." (*Id.* at ¶ 96.)

The Amended Complaint includes photographs of modular blocks located at different locations within the United States. (*See id.* at ¶¶ 107-28.) These locations belong to Fosbel suppliers directed by Fosbel. (*See id.*) Vanocur alleges those blocks are specifically designed to mimic the blocks used in the '853 patented design. (*Id.* at ¶ 125.) The specially designed blocks have no non-infringing use. (*Id.* at ¶ 126.)

B.     **Procedural History**

In April 2022, Vanocur initiated a lawsuit against Fosbel, Stelco, and Upstate for infringing on the '853 patent. (*Id.* at ¶ 95.) After Vanocur initiated this lawsuit, Stelco agreed to let Vanocur conduct a site inspection of its coke oven. (*Id.* at ¶ 97.) Following this visit, Vanocur voluntarily dismissed the suit without prejudice. (*Id.* at ¶¶ 97-102.) Vanocur claims that since dismissing that suit, it learned that Fosbel was storing potentially infringing refractory blocks in Clairton, Pennsylvania and Brook Park, Ohio, in addition to Stelco's site in Ontario, Canada. (*Id.* at ¶ 102). The Amended Complaint alleges some of the blocks were supplied to Stelco in Canada. (*See id.*) Moreover, the blocks "have distinct characteristics that necessarily infringe on plaintiff's '853 patent." (*Id.* at ¶ 103.)

On September 7, 2023, Vanocur filed its complaint in the Western District of New York. (Doc. 1) On October 31, 2023, the parties stipulated to transfer venue to this Court. (Doc. 9.)

Vanocur's original complaint contained two counts. In Count One, Vanocur claims infringement of the '853 Patent under the component export provisions of 35 U.S.C. §§ 271(f)(1) and (2). (Doc. 1 at 42-45, ¶¶ 129-43.) In Count Two, Vanocur alleges "literal" (typically referred to as direct) infringement under 35 U.S.C. § 271(a). (*Id.* at 45-47, ¶¶ 144-54.)

On December 21, 2023, Fosbel filed a motion to dismiss as well as a motion to stay proceedings. (Docs. 25, 26.)

On August 30, 2024, Vanocur sought leave to file an amended complaint to add Ceramic Holdings Inc. ("Ceramic Holdings") as a defendant, which was granted. (Docs. 46, 56.)

On October 28, 2024, Vanocur filed its Amended Complaint. (Doc. 57.) The Amended Complaint alleges:

> Defendant, Fosbel Inc., is an engineering company that specializes in refractory repairs, and maintenance in the steel, coke, and glass markets. Defendant Ceramic Holdings practiced the same business before selling its assets relating

>to that business to Fosbel.  As such, to avoid confusion, unless otherwise noted, "Defendants" herein refers to the continuous coke-oven-related business operating as Ceramic holdings before the asset purchase and then Fosbel after.

(Doc. 57 at ¶ 2.)  The Amended Complaint also quotes Fosbel's Initial Noninfringement Contentions.  (*Id.* at ¶ 29.)  In those, Fosbel asserted it is not a proper party to Vanocur's infringement allegations because Fosbel did not acquire any of Ceramic Holdings' alleged liabilities under their Asset Purchase Agreement ("APA").  (*Id.*)  Vanocur added Ceramic Holdings as a defendant "because Fosbel is allegedly a successor in interest as to the accused products in this case and therefore the alleged infringements by both parties arose from the same series of infringing transactions for the same products and there are common questions of fact as to both parties."  (*Id.* ¶ 35.)  Counts One and Two remain the same against Fosbel.  (*Compare* Doc. 1 at ¶¶ 129-154, *with* Doc. 57 at ¶¶ 129-154.)  Counts Three and Four add the same two claims against Ceramic Holdings.  (Doc. 57 at ¶¶ 155-179.)

On November 12, 2024, Fosbel moved to dismiss all claims asserted against it in the Amended Complaint (Counts I and II).  (Doc. 60.)  Fosbel makes four arguments: (1) Counts One and Two should be dismissed for failure to state claims of patent infringement because the Amended Complaint fails to identify a single, completed coke oven corbel as the accused product, and the remaining allegations fail to provide fair notice of the infringement claims (*id.* at 1682-89); (2) Count Two should also be dismissed for requiring extraterritorial application of 35 U.S.C. § 271(a) (*id.* at 1689-90); (3) Claim 10 must be dismissed from Count One (*id.* at 1690-91); and (4) the Amended Complaint should be dismissed for impermissible group pleading (*id.* at 1691-93).

On December 12, 2024, Vanocur responded in opposition.  (Doc. 66.)  Vanocur asserts the Amended Complaint sufficiently and plausibly alleges its claims for patent infringement in

Counts One and Two, and the Amended Complaint is supported by photos and a declaration. (*Id.* at 1712-20.)  To Vanocur, the Amended Complaint provides more than adequate notice of infringement.  (*Id.* at 1720-21.)  Finally, Vanocur maintains the Amended Complaint should not be dismissed for impermissible group pleading.  (*Id.* at 1721-25.)

The motion is fully briefed.  (*See* Docs. 60, 66, 68.)  The Court will address the parties' arguments in turn.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Rule 12(b)(6), a court must dismiss a complaint if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To survive a Rule 12(b)(6) motion, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When evaluating a motion to dismiss, the Court accept all factual allegations to be true and draw all inferences in the plaintiff's favor. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).  But the court "'need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson*

*Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)).  A pleading that offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012)).  Nor does a complaint suffice if it "tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quotations and citations omitted).

> B. **Count I – Component Export Liability**

"[T]he Patent Act identifies several ways that a patent can be infringed."  *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 415, 138 S. Ct. 2129, 201 L. Ed. 2d 584 (2018).  While the general rule under United States patent law is that no infringement occurs when a patented product is made and sold in another country, in 1984, Congress codified exceptions to the general rule in 35 U.S.C. § 271(f).  *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441, 127 S. Ct. 1746, 167 L. Ed. 2d 737 (2007) ("*Microsoft*").

Section 271(f) "expands the definition of infringement to include supplying from the United States a patented invention's components."  *Id.* at 444-45; *see also WesternGeco LLC*, 585 U.S. at 415 (§ 271(f) "protects against domestic entities who export components . . . from the United States") (citations and quotations omitted).

> Under § 271(f)(1):
>
> > Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
>
> Under § 271(f)(2):
>
> > Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component

> is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

The Court must "construe § 271(f)'s terms in accordance with [their] ordinary or natural meaning." *Microsoft,* 550 U.S. at 449 (citations and quotations omitted). A "component" is commonly defined as "a constituent part," "element," or "ingredient." *Id.* at 449 n.11.

Section 271(f)(1) applies to "all or a substantial portion of the components of a patented invention." The Supreme Court has held that a quantitative measurement – *not* a qualitative assessment – determines what is a substantial portion of components. *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 149-51, 137 S. Ct. 734, 197 L. Ed. 2d 33 (2017) (holding that a single component cannot give rise to liability under § 271(f)(1)).

> A supplier may be liable under § 271(f)(1) for supplying from the United States all or a substantial portion of the components (plural) of the invention, even when those components are combined abroad. The same is true even for a single component under § 271(f)(2) if it is especially made or especially adapted for use in the invention and not a staple article or commodity.

*Id.* at 152.

In Count One of the Amended Complaint, Vanocur contends Fosbel infringed under both subsections of Section 271(f). (Doc. 57 at ¶¶ 129-43.)

Fosbel asserts the purportedly infringing blocks described in the Amended Complaint were not put together to form a complete, infringing corbel. (Doc. 60 at 1687-88.) To Fosbel, Vanocur fails to allege the accused blocks were combined in a manner that satisfies all limitations of an asserted claim. (*Id.* at 1683.)

The Court finds Fosbel's characterization does not align with the Amended Complaint. Vanocur alleges the Stelco coke oven comprises or uses the components of Claim 1 of the '853

patent. (*See* Doc. 57 at ¶¶ 148-51.) Exhibit D to the Amended Complaint sets forth the following description for why the Stelco oven infringes on Claim 1 of the '853 patent:

| Elements of Claim 1 of '853 Patent: | Elements of the Stelco Coke Oven: |
|---|---|
| 1. A corbel (10) comprising: | Based on information and belief, the Stelco coke oven includes a corbel 10. |
| a first tier having first blocks (48), each of the first blocks (48) comprising a first, substantially horizontal aperture (72) extending through the first block (48) from a front surface to a back surface and a second, substantially vertical aperture (74) formed through a top surface of the block, extending into the first aperture (72), the first blocks (48) being arranged on a substantially planar surface (46) to align the respective first apertures (72) to define a first, substantially horizontal passageway; | Based on information and belief, the Stelco coke oven comprises a first tier 12 having first blocks 20, each of the first blocks 20 comprising a first, substantially horizontal aperture 28 extending through the first block 20 from a front surface 22 to a back surface 24 and a second, substantially vertical aperture 30 formed through a top surface 26 of the block 20, extending into the first aperture 28, the first blocks 20 being arranged on a substantially planar surface 42 to align the respective first apertures 28 to define a first, substantially horizontal passageway; |
| a second tier (50) having second blocks (50i), each of the second blocks (50i) comprising a third, substantially vertical aperture (80) extending through the second block (50i) from a top surface to a bottom surface, the second blocks (50i) being disposed above the first tier of blocks (48) to align the third aperture (80) of each of the second blocks (50i) with the second aperture (74) of the first blocks (48) to form a second passageway; | Based on information and belief, the Stelco coke oven comprises a second tier 14 having second blocks 60, each of the second blocks 60 comprising a third, substantially vertical aperture 68 extending through the second block 60 from a top surface 62 to a bottom surface 64, the second blocks 60 being disposed above the first tier 12 of blocks 20 to align the third aperture 68 of each of the second blocks 60 with the second aperture 30 of the first blocks 20 to form a second passageway; |
| a third passageway (78) extending diagonally from the top of the one of the second blocks (50i) to a side of at least one of the first and second blocks (48, 50i); and | Based on information and belief, the Stelco coke oven comprises a third passageway 80 extending diagonally from the top 62 of the one of the second blocks 60 to a side 66 of at least one of the first and second blocks; and |
| a gas source for providing gas to the first passageway. | Based on information and belief, the Stelco coke oven comprises a gas source for providing gas to the first passageway. |

(Doc. 57-4 at 1657.) Vanocur similarly alleges with respect to Claim 10:

| Elements of Claim 10 of '853 Patent: | Elements of the Stelco Coke Oven: |
|---|---|
| 10. A method of constructing the corbel (10) of claim 1, comprising the steps of: | Based on information and belief, the Stelco coke oven comprises corbel 10, constructed via a method comprising the steps of: |
| laying the first tier of blocks (48); | Based on information and belief, the Stelco coke oven is constructed by laying the first tier 12 of blocks 20; |
| laying the second tier (50) of blocks (50i) above the first tier of blocks (48); and | Based on information and belief, the Stelco coke oven is constructed by laying the second tier 14 of blocks 60 above the first tier 12 of blocks 60; and |
| introducing gas to the first aperture (72) using the gas source, the gas passing from the first passageway (72) into the second passageway (74, 80). | Based on information and belief, the Stelco coke oven is constructed by introducing gas to the first aperture 28 using the gas source, the gas passing from the first passageway 28 into the second passageway 30, 68. |

(*Id.* at 1659.)[2]

Fosbel criticizes the allegations in Exhibit D as merely parroting the patent language. (Doc. 60 at 1681, 1688-89.) It is true a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). But the "level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.*

Here, Vanocur's Amended Complaint does provide additional detail. First, the assertions in Exhibit D about the features of the Stelco coke oven do not purport to be mere patent-parroting or guesswork. (*See* Doc. 57-4.) The Amended Complaint alleges Vanocur physically

---

[2] "[A]llegations asserted upon information and belief are not *per se* insufficient to withstand a Rule 12(b)(6) motion and the Court must consider the pleading's factual allegations as a whole." *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 838 n.10 (N.D. Ohio 2021) (collecting authorities). In *Gold Crest*, the court noted the complaint contained a photograph of the alleged infringing product as well as other contextual details. *See id.* Here, Vanocur's Amended Complaint contains similar bolstering allegations. (*See* Docs. 57-2, 57-3.)

inspected the Stelco coke oven. (Doc. 57 at ¶¶ 97-98.) Second, the Amended Complaint includes an affidavit from a supplier for Fosbel indicating Fosbel caused refractory blocks (*i.e.*, alleged to be components of the '853 patented invention) to be supplied. (Doc. 57 at ¶¶ 101-06; Doc. 57-3.) Third, the Amended Complaint alleges concealment of infringing activity by Fosbel and its suppliers. (Doc. 57 at ¶¶ 95-106.) Fourth, the Amended Complaint includes photos of "refractory blocks that were created by Upstate at the direction of Fosbel [which] have distinct characteristics that necessarily infringe on plaintiff's '853 Patent." (*Id.* at ¶ 107; *see also id.* at ¶¶ 108-25; Doc. 57-2.)

Even assuming Vanocur did not plead or could not prove that components were ever assembled into a complete coke oven corbel that infringes the '853 patent, Vanocur still could have a viable claim under Section 271(f)(2). Indeed, Fosbel concedes on reply that a claim under Section 271(f)(2) would *not* be subject to dismissal on this basis, writing "[i]n contrast to §§ 271(a) and (f)(1), infringement under § 271(f)(2) does not require a showing of a completed infringing structure." (Doc. 68 at 1848.) Fosbel's reply concession on this point is correct as a matter of law.

> On its face, 271(f)(2) requires that the infringer only intend[ ] that such component will be combined. At no point does the statutory language require or suggest that the infringer must actually combine or assemble the components. A party can intend that a shipped component will ultimately be included in an assembled product even if the combination never occurs.
>
> . . . [T]he statutory language in this section does not require an actual combination of the components, but only a showing that the infringer shipped them with the intent that they be combined.

*Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1367-68 (Fed. Cir. 2001) ("*Waymark*"); *see also TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 408 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010); *Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d

388, 394 (D. Conn. 2006) ("Liability under (f)(2) does not depend on a showing that the combination actually takes place.") (citation omitted); *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057, 1073 (C.D. Cal. 2009) ("Since § 271(f)(2) explicitly provides for liability when only one component of a patented invention is supplied, the combination requirement cannot be read as requiring two supplied components to be combined.").

Here, the Amended Complaint includes what *Waymark*, 245 F.3d at 1367-38, treated as the necessary allegations:

> Fosbel directed Upstate to provide refractory blocks, which have no apparent non-infringing use, with knowledge and intent that the infringing refractory blocks would be assembled in Canada at the infringing Stelco coke oven. This can be demonstrated by blocks 20 and 60, which is a substantial portion of the invention claimed in the '853 Patent and have no non-infringing use as they were manufactured specifically for the Stelco coke oven and block 20 was directed to be transported to Fosbel in Ohio.

(Doc. 57 at ¶¶ 140-41; *see also id.* at ¶ 143.)

Section 271(f)(2) liability can be based on a single, specially designed component of a patented invention. The blocks featured in Vanocur's patented invention are alleged to be specially designed. (*Id.*; *see also id.* at ¶ 39 ("a coke-oven corbel is constructed by stacking specially designed refractory blocks").) Vanocur alleges the blocks Fosbel caused to be supplied had no apparent non-infringing use. (*Id.* at ¶ 140.)

For these reasons, Count One sets forth a plausible claim under Section 271(f)(2).

With respect to Section 271(f)(1), it is necessary that the defendant supplied or caused to be supplied either all or a substantial portion of the components. Fosbel's motion does not contend the alleged refractory block components fail to comprise a majority or substantial portion of the components of the '853 patent invention. *See* 35 U.S.C. § 271(f)(1). In other words, Fosbel's motion does not mount a "quantitative" challenge under the rule laid out by the

Supreme Court in *Life Techs. Corp.*, 580 U.S. at 151. Instead, Fosbel argues that Count One should be dismissed because the different refractory block components are located in different places within the United States. (Doc. 60 at 1682-88.)

Section 271(f) on its face suggests there can be infringement liability even where the offending component parts remain unassembled. Subsections (1) and (2) both apply where the at-issue component(s) are "uncombined in whole or in part." §§ 271(f)(1) and (2). In light of this language, it is not clear what legal significance attaches to Fosbel's repeated observation that the components described in the Amended Complaint were found stored in separate suppliers working at the direction of Fosbel.

That components may be created or stored at different locations within the United States seems to be of no consequence under the language of the statute. Section 271(f)(1) requires that the defendant supply or cause to be supplied a substantial number of the components and that the defendant has the requisite intent that those be combined outside the United States. The statute on its face does not require that the components be manufactured simultaneously, stored together in one location, or exported together.

Fosbel's reply brief sets out a particular challenge to the viability of Count One under § 271(f)(1). "[A] complete structure, *i.e.*, one that meets all limitations of at least one claim of the '853 patent, *is* required to sufficiently plead infringement under §§ 271(a) and (f)(1) . . . ." (Doc. 66 at 1845 (emphasis in original).) The reply further argues to "actively induce" the combination of components outside the United States under § 271(f)(1), such a combination actually must have occurred. (*Id.* at 1847-48.)

For a few reasons, the Amended Complaint plausibly alleges a violation of § 271(f)(1) at this stage. Fosbel's motion did not articulate the legal theory that 'active inducement'

necessarily requires a completed, assembled infringing product abroad. Rather, this legal theory was advanced on reply. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (arguments made for the first time in a reply brief are waived).

In any event, the Amended Complaint does allege active inducement and combination abroad: "Defendants not only directed Upstate to manufacture these infringing coke-oven components, but, upon information and belief, actively induced the combination of these components (and other patented components) outside the United States via the arrangement Defendants had with Stelco." (Doc. 57 at ¶ 127; *see also id.* at ¶ 128.)

Vanocur's opposition to the motion articulated its theory for why active inducement occurred here in satisfaction of the language of § 271(f)(1). Vanocur did so by citing to particular portions of the Amended Complaint:

> Fosbel marketed and sold the blocks to its U.S. and foreign customers for purposes of combining them to build corbels of coke ovens. FAC ¶ 15, 102*; see also* FAC-3 (Wetmore Declaration) ¶¶ 7–18. Fosbel understood that combination of the blocks would infringe the '853 Patent, but wrongfully represented that the '853 Patent was not in force. FAC ¶¶ 92–94. Accordingly, Fosbel actively induced the combination of the components. Therefore, it is at least plausible Fosbel infringed the '853 Patent under Section 271(f)(1).

(Doc. 66 at 1715.)

Taking the allegations as true, the Amended Complaint plausibly alleges a theory of infringement under § 271(f)(1). The facts as alleged do not rule out the possibility that Vanocur could prove a viable theory under subsection (1).

The cases Fosbel cites on reply do not warrant dismissal. Fosbel's citation of Footnote 1 in *Applera Corp. v. MJ Rsch., Inc.*, 311 F. Supp. 2d 293, 301 n.1 (D. Conn. 2004), is taken out of context and misleading. (*See* Doc. 68 at 1847.) The district court noted it was "troubled" by a statement from the Federal Circuit in *Waymark*, 245 F.3d at 1368. *See Applera Corp.*, 311 F.

Supp. 2d at 301 n.1. But the court ultimately made no decision based on this *dicta*. *See id.* ("the record is otherwise insufficient for the Court to address this potential problem"). In any event, the decisions of the Federal Circuit carry more persuasive force than that of one district court in Connecticut. "In accordance with Federal Circuit jurisprudence, district courts adjudicating patent cases apply the law of the Federal Circuit to questions pertaining to patent law . . . ." *Beacon Nav. GmbH v. Bayerische Motoren Werke AG*, 709 F. Supp. 3d 364, 372-73, (E.D. Mich. 2023) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007)).

Fosbel also cites *People.ai, Inc. v. SetSail Techs., Inc.*, No. C-20-09148, 2021 WL 2333880, at *6, 2021 U.S. Dist. LEXIS 108348 (N.D. Cal. June 8, 2021). (Doc. 60 at 1689; Doc. 66 at 1848.) But that case offers no substantive analysis because *People.ai*'s complaint included only "(fleeting) references" to § 271(f). 2021 WL 2333880, at *6. The district court provided no analysis of subsection (1). *Id.* Instead, *People.ai* involved a straightforward dismissal because the product at issue was software, which the Supreme Court in *Microsoft* held is *not* the sort of component that can give rise to liability under § 271(f). *Id.* at *6-*7; *see also Microsoft*, 550 U.S. at 457-58.

Here, Vanocur's Amended Complaint identifies and provides photos of modular blocks, which it alleges are components from the '853 patent invention that necessarily infringe because they have no non-infringing use. In Exhibit D to the Amended Complaint, Vanocur compares the sets of blocks to particular elements of Claim 1 in the '853 patent. This case does not involve the failure to identify the alleged infringing components.

The Amended Complaint states a plausible claim for component export liability. Fosbel's motion to dismiss Count One is denied, aside for one exception discussed below.

C. **Count I – Claim 10**

Count One is based on the two component export subsections of § 271(f). (Doc. 57 at ¶¶ 130-43.) Fosbel moves to dismiss Count One insofar as it is based on the dependent method claim found in Claim 10 of the '853 patent. (Doc. 60 at 1690-91.)

Vanocur responds solely that Claim 10 should survive as a basis for the direct infringement claim in Count Two. (Doc. 66 at 1719.)

Fosbel is correct on this point of law. The Federal Circuit has held "that Section 271(f) does not apply to method patents." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009). That is because "method patents do not have physical components that could be combined outside the United States as prohibited by § 271(f)." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012) (citing *id.*); *see also NetJumper Software LLC v. Google Inc.*, No. 04-70366, 2014 WL 12660542, at *4, 2014 U.S. Dist. LEXIS 200633 (E.D. Mich. Feb. 25, 2014).

Count One is dismissed only as to the dependent Claim 10 in the '853 patent. Count One remains as to the independent Claim 1 in the '853 patent.

D. **Count II – Direct Infringement**

Direct patent infringement is governed by 35 U.S.C. § 271(a), which provides "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." Direct infringement is a "strict-liability offense," and the alleged infringer's "mental state is irrelevant." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 135 S. Ct. 1920, 191 L. Ed. 2d 883 (2015) (citation omitted); *Gold Crest, LLC*, 525 F. Supp. 3d at 836 (citation omitted). "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, a plaintiff need not even identify which claims it asserts are

being infringed." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) (citation omitted).

Fosbel argues because Vanocur's infringement claims depend on three different sets of refractory blocks in different locations, Vanocur is "relying on amalgamation of parts from separate sites and separate coke ovens." (Doc. 60 at 1682.)  To Fosbel, the Amended Complaint "necessarily fails to 'fairly identify' the accused instrumentality." (*Id.* at 1682-83 (citing *Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018).)

Fosbel relies on cases that do not provide much support.  *Artrip* bears little resemblance to this case.  *Artrip* involved a plaintiff who, after multiple chances to amend, did not allege basic elements, including whether the defendant knew of the patents or whether the products defendant supplied did not have a non-infringing use.  735 F. App'x at 713.  Vanocur's Amended Complaint does contain such allegations.  The Amended Complaint specifically alleges the blocks do not have a non-infringing use. (*See* Doc. 57 at ¶¶ 126, 140, 141, 143.)  The Amended Complaint also alleges Fosbel knew of, and intentionally distorted, Vanocur's patent. (*See id.* at ¶¶ 3, 6, 18, 92, 94.)  Exhibit D to the Amended Complaint specifies aspects of the Stelco coke oven alleged to infringe on the '853 patent. (Doc 57-4.)  Additionally, paragraphs 107 to 128 of the Amended Complaint provide detail regarding the activity alleged to be infringing. (Doc. 57 at ¶¶ 107-28.)

Fosbel also cites inapposite caselaw involving patent infringement plaintiffs who tried to cobble together an infringing collection of features drawn from multiple products – rather than identify one product alleged to infringe on one or more claims in a patent.  *See CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 499 (W.D. Tex. 2023) (citations omitted), *appeal dismissed*, No. 2023-2428, 2024 WL 2587917, 2024 U.S. App. LEXIS 12531 (Fed. Cir. May 24,

2024). "Direct infringement requires that each and every limitation set forth in a claim appear in an accused product. A plaintiff does not satisfy this requirement by mixing and matching between different accused products in its claim charts, as [i]nfringement cannot be shown by a muddled hash of elements from different products." *Id.* at 499 (quotations and citations omitted).

Fosbel's argument and this caselaw are misplaced. (*See* Doc. 60 at 1683, 1687; Doc. 68 at 1845.) The three sets of blocks described in the Amended Complaint are alleged to be the three types of blocks that together create the corbels described in the '853 patent. These blocks are components of *one* product – a corbel as described in Vanocur's '853 patent – *not* distinct products cobbled together from Fosbel's catalog of offerings.

That said, Fosbel is correct to point out that § 271(a) does not apply outside the United States. "It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) (citation omitted); *see also Microsoft*, 550 U.S. at 442 ("no infringement occurs when a patented product is made and sold in another country").

For now, the Court must take the allegations in the Amended Complaint as true. And with respect to Count Two, Vanocur alleges "Fosbel has been making, using, selling and/or offering to sale, in the United States and elsewhere, infringing corbels that embody the inventions claimed in the '853 Patent, in violation of 35 U.S.C. § 271." (Doc. 57 at ¶ 146.) Vanocur further alleges "Fosbel made the Stelco coke oven in the United States and thus, Fosbel literally infringed Claims 1-3, 5-7, 9-15, and 17 of the '853 Patent." (*Id.* at ¶ 149.)

The Amended Complaint states a plausible claim for direct patent infringement. Fosbel's motion to dismiss Count Two is denied.

### E. Group Pleading

Finally, Fosbel argues the Amended Complaint is subject to dismissal for impermissible shotgun-style group pleading because it refers to Fosbel and Ceramic Holdings collectively as "Defendants." (Doc. 60 at 1675-76, 1691-93.) However, the Amended Complaint clarifies that Ceramic Holdings "practiced the same business" as Fosbel before selling its assets and defines "Defendants" as "the continuous coke-oven-related business operating as Ceramic Holdings before the asset purchase and then Fosbel after." (Doc. 57 at ¶ 2.) The asset purchase occurred pursuant to an Asset Purchase Agreement dated March 8, 2019. (*Id.* at ¶ 29.) Vanocur further alleges Fosbel is "a successor in interest as to the accused products in this case." (*Id.* at ¶ 35.)

The Amended Complaint is explicit that Counts One and Two are directed at Fosbel, while Counts Three and Four are directed at Ceramic Holdings. (*Id.* at ¶¶ 129-79.) Even where the Amended Complaint refers to "Defendants" collectively, the Amended Complaint defines the parties as a continuous business operating as Ceramic Holdings pre-March 8, 2019, and Fosbel post-March 8, 2019. It is clear whose conduct is at issue based on this definition. This is not impermissible shotgun pleading. *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392-93 (6th Cir. 2020) ("shotgun pleading" violates Rule 8 because it provides defendants inadequate notice of the claims against them).

Fosbel makes additional arguments about successor liability. (Doc. 60 at 1691-93; Doc. 68 at 1849-50.) According to Fosbel, the alleged infringement conduct occurred before the asset purchase under the APA, so Ceramic Holdings is liable, not Fosbel. (*Id.*) Fosbel argues Vanocur's Amended Complaint does not include adequate allegations to support a theory of

successor liability based on a continuation of business ownership under Ohio law. (*Id.*) The parties put forth competing tests for successor liability. (*See id.*; Doc. 66 at 1721-25.)

Vanocur argues Fosbel overstates the issue of successor liability at this stage. (Doc. 66 at 1721.) The Court agrees. To the extent Fosbel intends to challenge its liability based on the APA, such arguments are more suitable for summary judgment. The APA is not attached to the Amended Complaint. (*See* Doc. 57.) Significantly, Fosbel has not provided authority as to why the Court must determine the correct successor liability test at the pleading stage. Fosbel relies on cases where successor liability was raised on summary judgment, after trial, or on a motion challenging personal jurisdiction. (*See* Doc. 60 at 1691-93; Doc. 68 at 1849-50). These cases do not support dismissal at the pleading stage. In viewing the Amended Complaint in the light most favorable to Vanocur, it alleges infringement conduct that continued under Fosbel following the asset purchase. (*See* Doc. 57 at ¶¶ 14, 18-21, 90-94.) Vanocur has sufficiently stated plausible claims against Fosbel at this stage.

## III.    CONCLUSION

For the reasons stated herein, Fosbel's Motion to Dismiss (Doc. 60) is DENIED in part and GRANTED in part.

**IT IS SO ORDERED.**

**Date:**  August 25, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE